# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| MONOCOQUE DIVERSIFIED INTERESTS, LLC,<br>*Plaintiff*<br><br>v.<br><br>USA JET AIRLINES, INC., RAMBLER AIR, LLC, ARCTIC-ON-DEMAND, LLC, ROADRUNNER TRANSPORTATION SYSTEMS, INC., ASCENT GLOBAL LOGISTICS HOLDINGS, INC., ACTIVE AERO GROUP, INC.,<br>*Defendants* | No. A-21-CV-00956-RP |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff Monocoque Diversified Interests, LLC's ("MDI") Motion to Remand, Dkt. 12; Defendants USA Jet Airlines, Inc., Rambler Air, LLC, Arctic-On-Demand, LLC, Roadrunner Transportation Systems, Inc., Ascent Global Logistics Holdings, Inc., and Active Aero Group, Inc.'s ("Defendants") Motion to Transfer, Dkt. 17; and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation.

## I.   BACKGROUND

MDI brings this lawsuit against Defendants based on a series of agreements regarding MDI's provision of consulting and management services to Defendants'

1

airline operations in Alaska. Dkt. 11, at 3-11. In 2018, MDI entered into non-disclosure and consulting agreements with USA Jet Airlines, Inc. ("USA Jet") to provide "consulting services for the modernization and replacement of USA Jet's aircraft fleet." *Id.* at 4. In 2020, MDI entered into master service agreements with two USA Jet affiliates, Rambler Air, LLC and Arctic-On-Demand, LLC, for management of their airline operations in Alaska.[1] *Id.* at 6-8.

Each of the master service agreements contained a buyout payment provision requiring Rambler and Arctic to furnish MDI with $12,000,000 for termination of the agreements without renewal. *Id.* MDI alleges that a year after entering into the master agreements, however, Roadrunner and Arctic began attempting to negotiate out of the buyout payment provisions due to their inability to obtain certain certifications from the Department of Transportation that would allow them to carry passengers in Alaska. *Id.* When MDI refused to re-negotiate these provisions, Defendants, according to MDI, "combined and conspired to shut down all Alaska operations, transfer or sell all assets of Rambler and Arctic, [and] make spurious claims about MDI" for the purpose of tortiously interfering with MDI's contract rights under the various agreements. *Id.* Specifically, MDI alleges that Rambler and Arctic terminated all their employees in Alaska, and sold or transferred all their assets to make "it impossible for MDI to perform the services it agreed to provide, as no assets remained to be managed." *Id.*

---

[1] MDI alleges that Defendants Roadrunner and Active Aero Group, Inc. acquired the airline services through a bankruptcy proceeding. Dkt. 11, at 7.

MDI initially brought this lawsuit in state court, and now brings claims for fraudulent inducement, negligent misrepresentation, conspiracy, tortious interference with MDI's contract rights, and quantum meruit against Defendants, as well as breach of contract claim against USA Jet based on its alleged breach of the non-disclosure and consulting agreements. Dkt. 1-3 at 6-8; Dkt. 11, at 12-16. Defendants removed this case to federal court, Dkt. 1, and MDI moved to remand the lawsuit to state court based on lack of diversity of citizenship. Dkt. 12. Defendants then moved to transfer MDI's tort claims to United States District Court for the District of Delaware pursuant to a forum selection clause in the master service agreements. Dkt. 17. The undersigned will address each of these motions[2] below.

## II.   DISCUSSION

### A.   Motion to Remand

MDI moves to remand this lawsuit back to state court for lack of complete diversity of citizenship between the parties. Dkt. 12, at 2. Specifically, MDI argues that, based on its members, it is a citizen of both Texas and Alaska, while Arctic and Rambler are both Alaskan limited liability companies. *Id.* Defendants oppose MDI's motion to remand, arguing that because Arctic and Rambler are wholly owned by Active, which is a citizen of Delaware and Michigan, there is in fact complete diversity between the parties. Dkt. 13, at 3-4. Defendants further contend that while Arctic and Rambler were both formed in Alaska, and exclusively operate there, their citizenship as limited liability companies is determined by the citizenship of their

---

[2] Defendants filed two other motions to dismiss, Dkts. 15, 19, that have not been referred to the undersigned.

members, not by where they are incorporated and operate. *Id.* at 3 (citing *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019)).

The parties' dispute revolves around whether Arctic and Rambler are properly considered citizens of Alaska for the purposes of diversity jurisdiction. As limited liability corporations, their citizenship is determined by that of all their members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) ("the citizenship of a LLC is determined by the citizenship of all of its members."). In their notice of removal and subsequent filings, Defendants have represented that the sole member of both Rambler and Arctic is Active, a corporation incorporated in Delaware with its principal place of business in Michigan. Dkt. 1, at 2-3; *see also* Dkt. 13-1 ("The principal place of business for Active is Michigan."); Dkt. 13-5 (LexisNexis DESOS Company Report reflecting that Active was incorporated in Delaware in 2004).

MDI does not contest that Active is the sole member of Rambler and Arctic, or even that it is a citizen of Delaware or Michigan. *See* Dkt. 14. Instead, MDI warns that "it is not wise to trust information from the Internet," presumably referring to the LexisNexis report indicating that Active was incorporated in Delaware,[3] and makes much of the fact that one of MDI's members is a citizen of Alaska. Dkt. 14; Dkt. 13-5. Regardless of whether one of MDI's members is a citizen of Alaska, Rambler and Arctic's Delaware or Michigan citizenship through their sole member, Active, is sufficient to establish diversity jurisdiction. *See MidCap*, 929 F.3d at 314. Defendants have thus carried their burden of establishing that diversity jurisdiction

---

[3] Yet MDI itself alleges that Active "is a Delaware corporation" in its amended complaint. Dkt 11, at 2.

4

exists under 28 U.S.C. § 1332 and that, as such, removal was proper. *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996). The undersigned recommends that the District Court deny MDI's motion to remand.

### B. Motion to Sever and Transfer

Defendants move to sever and transfer MDI's tort claims to the District of Delaware, pursuant to 28 U.S.C. § 1404(a), based on the forum selection clauses contained in the master service agreements executed between MDI, Rambler and Arctic. *See* Dkt. 17. Indeed, both master service agreements contain a section entitled "Governing law and Venue," which states that "This agreement shall be governed by and construed in accordance with the laws of the state of Delaware without regard to the conflict of law provisions thereof. Venue on all potential issues of disputes related to or arising out of this agreement shall be in Delaware." Dkt. 17-3, at 21; Dkt. 17-4, at 15. MDI opposes transfer of its tort claims to Delaware because the forum selection clauses in the master service agreements "was a result of overreaching by the Rambler and Arctic," and should not apply to those defendants who were not parties to the master service agreements. Dkt. 21, at 2-6.

Initially, the undersigned notes that because this Court has diversity jurisdiction over this lawsuit, it "must apply the choice of law rules of the forum state, here Texas." *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004). Because the parties agreed to the application of Delaware law in the master service agreements and Delaware bears a "reasonable relationship" to the parties and their

5

transaction,[4] Delaware law governs the interpretation of the forum selection clause at issue here. Dkt. 17-3, at 21; Dkt. 17-4, at 15; *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000); *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004).

Defendants argue that MDI's tortious interference, conspiracy, fraudulent inducement and negligent misrepresentation claims fall under the scope of the forum selection clauses in the master service agreements because they are "related" to the agreements since they "facially 'touch on contract rights or contract performance.'" Dkt. 17, at 10-11 (quoting *ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Trust*, C.A. No. 6562-VCP, 2011 WL 4552508, at *5 (Del. Ch. Sept. 14, 2011)). MDI does not appear to dispute that its tort claims against Defendants fall under the forum selection clauses in the master service agreements, but rather appears to argue that the Court should use its discretion to decline to enforce the forum selection clauses. Dkt. 21, at 3-5 (citing *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016)). Yet because all of MDI's claims revolve around Defendants' alleged stratagem to avoid paying MDI under the buyout provision of the master service agreements, *see* Dkt. 11, at 9-16, the undersigned finds that the tort claims fall under the forum selection clauses and will address whether the clauses should be enforced against MDI below.

Having found that the tort claims fall within the forum selection clauses, the undersigned must determine whether the forum selection clauses are mandatory, valid, and enforceable. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir.

---

[4] Indeed, as noted above, Rambler and Arctic are citizens of Delaware (or Michigan) for the purposes of diversity citizenship. *See* Dkts. 13-1, 13-5.

2016). Based on the Fifth Circuit's instruction in *Weber*, the undersigned must "determine whether [the clauses] are mandatory or permissive," according to Delaware law, before their "enforceability come[s] into play." *Id.* While MDI failed to address the mandatory nature of the forum selection clauses entirely, Defendants inexplicably cited only two cases applying Texas law to support their contention that the forum selection clauses contained in the master service agreements are mandatory. Dkt. 21; Dkt. 17, at 14. Nonetheless, Delaware courts have found forum selection clauses, such as the one at issue here, indicating that "all" disputes arising from the agreement "shall" be litigated in a specified forum to be mandatory. *See, e.g., Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*, 992 A.2d 1239, 1250 (Del. Ch. 2010) ("a provision stating that a court *shall* have jurisdiction over *any* dispute [read] as a mandatory, rather than permissive, grant of jurisdiction"). The forum selection clauses here are mandatory.

The undersigned next finds that the forum selection clause is enforceable under federal law. *See Weber*, 811 F.3d at 770 ("the *enforceability* of an FSC is governed by federal law"). Under federal law, FSCs are presumptively valid and should be enforced unless shown to be unreasonable under the circumstances. *Id.* at 73; *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997)[5]; *see also Carnival*

---

[5] "Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state." *Haynsworth*, 121 F.3d at 963.

*Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991). While MDI argues that the forum selection clauses should not be enforced because they were procured as "a result of overreaching by Rambler and Arctic" since the agreements between MDI and USA Jet set venue in Travis County, MDI fails to cite to any authority to support this contention. Dkt. 21, at 4. Moreover, as Defendants point out, MDI itself alleged that the master service agreements were "fully negotiated" by "parties [who] were represented by well-known, capable attorneys of their own choice," and the Fifth Circuit has found that a "change in a forum selection clause from prior agreements between parties—is not evidence of fraud or overreaching." Dkt. 24, at 5 (citing *Haynsworth*, 121 F.3d at 964-65); Dkt. 11, at 7 ("The Master Services Agreements were not only fully negotiated by the parties, but all parties were represented by well-known, capable attorneys of their own choice.").

MDI further argues, again without support, that the forum selection clauses should not be enforced, and the tort claims not severed and transferred, because it could "deprive [MDI] of its day in court," and maintaining this lawsuit in this forum will serve the convenience of the parties and the interest in conserving judicial resources. Dkt. 21, at 4. Aside from arguing that the "records related to assets are located in Texas," MDI fails to offer any compelling reason why being forced to litigate its claims arising from the master service agreements in Delaware would deprive it of its day in court, undermine the public interest, or "contravene a strong public policy of the forum state." Dkt. 24, at 5; *Barnett*, 831 F.3d at 303 (plaintiff may escape forum selection clause if its "enforcement would contravene a strong or fundamental public

8

policy of Texas" (internal quotation marks removed)); *In re Rolls Royce Corp.,* 775 F.3d 671, 678 (5th Cir. 2014) (when parties hold valid forum selection clause, only the public-interest section 1404 factors may weigh against transfer, though "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that the forum-selection clauses should control except in unusual cases").

While the undersigned is sympathetic to MDI's wish to litigate all claims regarding its agreements with Defendants in one forum, it has nonetheless failed to overcome the "presumption of enforceability" given the forum selection clauses such as the ones at issue here by making a "showing that the clause is unreasonable under the circumstances." *Barnett*, 831 F.3d at 301 (federal law "requires a party attacking a forum-selection clause to overcome a presumption of enforceability by showing that the clause is unreasonable under the circumstances") internal citations removed)); *Weber*, 811 F.3d at 776 ("a high burden of persuasion [rests] on the party seeking to avoid enforcement of the FSC"). The undersigned finds that MDI has not shown that enforcement of the parties' bargained-for choice of law and forum would be unreasonable under the circumstances so as to render it unenforceable.

Defendants finally argue that, though not signatories to the master service agreements, Defendants USA Jet, Active, and Ascent may nonetheless enforce the forum selection clauses contained in those agreements because: (1) MDI has relied on the terms of the master service agreements in bringing its claims against the non-signatory defendants; and (2) MDI's complaint raises allegations of "substantially interdependent and concerted misconduct" by both the non-signatory and signatories

9

to the master service agreements. Dkt. 17, at 18 (citing *Vartec Telecom, Inc. v. BCE, Inc.,* No. 3:02-CV-2585-M, 2003 WL 22364302, at *2 (N.D. Tex. Oct. 9, 2003)). MDI responds by arguing, again without citing to any authority, that because "Ascent, Active Aero[,] and Roadrunner were not parties to the MSA[]s they have no basis for claiming venue in Delaware is 'mandatory.'" Dkt. 21, at 5. Yet in this circuit, non-signatories may enforce forum selection clauses under the doctrine of equitable estoppel when: (1) a signatory to a written agreement must rely on the terms of the written agreement in asserting its claims against the non-signatory; or (2) a signatory to the contract raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract. *Vartec,* 2003 WL 22364302, at *2; *see also Harries v. Stark*, No. 3:14-CV-2684-L, 2015 WL 4545071, at *9 (N.D. Tex. July 28, 2015).

The undersigned finds that both circumstances warranting the enforcement of the forum selection clause by non-signatories USA Jet, Active, and Ascent have been met because MDI's claims against these defendants rely expressly on the terms of the master service agreements, and the coordinated efforts of Defendants, signatories and non-signatories to the master service agreements alike, to evade enforcement of the buyout provision. Dkt. 11, at 11 ("Defendants also took all these actions that tortiously interfere with MDI's contracts … to deprive MDI of its $12,000,000.00 'Buy-Out Payment' and to deprive MDI of its opportunity to perform its obligations under the Master Service Agreements."); *Harries,* 2015 WL 4545071, at *9 (plaintiff's complaint "must rely on the express terms of the written agreement" for a non-

signatory to bind a signatory to a forum selection clause); *Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 527 (5th Cir. 2000) ("When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement."). The undersigned thus finds that the non-signatory defendants USA Jet, Active, and Ascent may enforce the forum selection clauses against MDI.

Defendant's motion to sever and transfer MDI's tort claims to Delaware should thus be granted in its entirety to vindicate the parties' contractual expectations regarding the forum for resolution of any disputes arising from the master service agreements. *See Stewart v. Livingston*, Civ. A. No. H-14-1483, 2014 WL 4975434, at *5 (S.D. Tex. Oct. 3, 2014) (citation omitted) ("The Court ... has broad discretion to sever and transfer issues that should be tried in another district.").

### III. RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **DENY** MDI's motion to remand, Dkt. 12, and **GRANT** Defendant's motion to transfer, Dkt. 17. MDI's claims against Defendants should be severed and transferred to the District of Delaware pursuant to the forum selection clauses contained in the master service agreements. Only MDI's breach of contract claim against USA Jet should remain before this Court.

The referral of this case to the Magistrate Court should now be canceled.

## IV.     WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED February 1, 2022.

    DUSTIN M. HOWELL
    UNITED STATES MAGISTRATGE JUDGE